**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**

| | |
|---|---|
| TIMOTHY JOSEPH MCCLUSKY,<br><br>        Plaintiff,<br><br>v.<br><br>LEXISNEXIS RISK SOLUTIONS, INC.,<br>**SERVE:** Corporation Service Company<br>        2626 Glenwood Avenue, Suite 550<br>        Raleigh, NC 27608<br>and<br><br>SOFI BANK, N.A.,<br>**SERVE:** CT Corporation System<br>        160 Mine Lake Court, Suite 200<br>        Raleigh, NC 27615<br><br>        Defendants. | Case No.<br><br><br><br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT**

Timothy J. McClusky, by and through his undersigned Counsel, brings this action against Defendants LexisNexis Risk Solutions, Inc.; and SoFi Bank, N.A., and for his causes of action states as follows:

**PRELIMINARY STATEMENT**

1.     The computerization of our society has resulted in a revolutionary increase in the accumulation and processing of data concerning individual American

consumers. Data technology, whether it is used by businesses, banks, the Internal Revenue Service or other institutions, allows information concerning individual consumers to flow instantaneously to requesting parties. Such timely information is intended to lead to faster and better decision-making by its recipients and, in theory, all of society should ultimately benefit from the resulting convenience and efficiency.

2.      Unfortunately this information has also become readily available for, and subject to, mishandling and misuse. Individual consumers can and do sustain substantial damage, both economically and emotionally, whenever inaccurate or fraudulent information is disseminated and/or obtained about them. In fact, national credit bureaus like LexisNexis acknowledge this potential for misuse and resulting damage every time they sell consumer reports like the ones at issue in this case.

3.      The Fair Credit Reporting Act ("FCRA") strictly curtails the assembling and trading of such information, requiring consumer reporting agencies ("CRAs") like LexisNexis to adhere to reasonable procedures designed to assure the maximum possible accuracy of the information they report. 15 U.S.C. § 1681e(b).

4.      And when a consumer disputes inaccurate information in a LexisNexis report, LexisNexis must reasonably investigate those disputes and correct information that is inaccurate or delete information that cannot be verified. 15 U.S.C. § 1681i.

2

5. Accessing consumer reports is presumptively illegal, and the FCRA imposes meaningful obligations and requirements upon those who wish to access such reports.

6. Chief among these protections is the requirement that a person seeking a consumer report have a permissible purpose under the Act for seeking the reports, and it must certify that purpose to the CRA. 15 U.S.C. §§ 1681b(a), 1681e(a).

7. The ongoing technological advances in the area of data processing have resulted in a boon for the companies like LexisNexis, that accumulate and sell data concerning individuals' credit histories and other personal information.

8. These CRAs sell information to readily paying subscribers (i.e., retailers, landlords, lenders, potential employers, and other similar interested parties), concerning individuals who may be applying for retail credit, housing, employment, or a car or mortgage loan.

9. Since 1970, when Congress enacted the FCRA, federal law has required CRAs to implement and utilize reasonable procedures "to assure maximum possible accuracy" of the personal, private, and financial information that they compile and sell about individual consumers.

10. One of the primary purposes in requiring CRAs to assure "maximum possible accuracy" of consumer information is to ensure the stability of our banking system:

The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.

15 U.S.C. § 1681(a)(1).

11. The preservation of one's good name and reputation is also at the heart of the FCRA's purposes:

[W]ith the trend toward computerization of billings and the establishment of all sorts of computerized data banks, the individual is in great danger of having his life and character reduced to impersonal "blips" and key-punch holes in a stolid and unthinking machine which can literally ruin his reputation without cause, and make him unemployable or uninsurable, as well as deny him the opportunity to obtain a mortgage or buy a home. We are not nearly as much concerned over the possible mistaken turn-down of a consumer for a luxury item as we are over the possible destruction of his good name without his knowledge and without reason. Shakespeare said, the loss of one's good name is beyond price and makes one poor indeed.

*Bryant v. TRW, Inc.*, 689 F.2d 72, 79 (6th Cir. 1982) (quoting 116 cong. Rec. 36570 (1970)) (emphasis added).

12. The FCRA also requires CRAs to conduct a reasonable reinvestigation to determine whether information disputed by consumers is inaccurate and record the current status of the disputed information, or delete the disputed information, before the end of the 30-day period beginning on the date on which the CRA receives the notice of dispute from the consumer. This mandate exists to ensure that consumer disputes are handled in a timely manner and that inaccurate information contained

4

within a consumer's credit report is corrected and/or deleted so as to not prevent said consumer from benefiting from his or her credit and obtaining new credit.

13. In light of these important findings and purposes, Congress specifically noted "a need to insure that [CRAs] exercise their grave responsibilities with fairness, impartiality, and respect for the consumer's right to privacy." *See* 15 U.S.C. § 1681(a)(4).

14. Plaintiff's claims arise out of LexisNexis's inaccurate credit reporting, wherein it reported to Plaintiff's potential creditors that SoFi accessed Plaintiff's LexisNexis consumer report so that SoFi could collect from Plaintiff on a SoFi account when that was not true.

15. Plaintiff disputed the inaccuracy with LexisNexis twice, but LexisNexis failed to reasonably investigate those disputes and correct the inaccuracy.

16. SoFi also obtained a consumer report about Plaintiff on May 1, 2024, but Plaintiff never applied for credit with SoFi. SoFi therefore accessed Plaintiff's credit without an FCRA permissible purpose for doing that. SoFi accessed Plaintiff's credit repeatedly throughout 2023 and 2024, resulting in approximately 4 improper credit pulls.

17. Plaintiff did not apply for credit with SoFi, nor have any accounts with SoFi, during this period.

5

18.     Accordingly, Plaintiff brings claims against LexisNexis for failing to follow reasonable procedures to assure the maximum possible accuracy of Plaintiff's credit reports, in violation of the FCRA, 15 U.S.C. § 1681e(b), and failing to conduct a reasonable reinvestigation to determine whether information Plaintiff disputed was inaccurate and record the current status of the disputed information, or delete the disputed information from Plaintiff's credit file, in violation of the FCRA, 15 U.S.C. § 1681i.

19.     Plaintiff also brings a claim against Defendant SoFi for accessing his consumer report without having a permissible purpose for doing so, in violation of the FCRA, 15 U.S.C. § 1681b(f).

20.     As part of this action, Plaintiff seeks actual, statutory, and punitive damages, costs and attorneys' fees from Defendants for their willful and/or negligent violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq*., as described herein.

## PARTIES

21.     Timothy J. McClusky is a natural person residing in Charlotte, Norh Carolina, and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

22.     Defendant LexisNexis Risk Solutions, Inc. is a limited liability company with a principal place of business located at 1550 Peachtree Street, N.W., Atlanta, Georgia 30309, and is authorized to do business in the State of North

Carolina, including within this District. LexisNexis can be served at its registered agent for service Corporation Service Company at 2626 Glenwood Avenue, Suite 550, Raleigh, NC 27608.

23.     LexisNexis is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f). LexisNexis is regularly engaged in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d) to third parties.

24.     Defendant SoFi Bank, N.A. is an FDIC insured national bank headquartered at 2750 E Cottonwood Parkway, Cottonwood Heights, Utah 84121, and is authorized to do business in the State of North Carolina, including within this District. SoFi can be served at its registered agent for service, CT Corporation System 160 Mine Lake Ct., Ste. 200, Raleigh, NC 27615-6417.

25.     SoFi is a credit grantor and "furnisher" of consumer information, as the term is used in 15 U.S.C. § 1681s-2(b).

## JURISDICTION AND VENUE

26.     This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

27.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District and Division.

## FACTS

### *Summary of the Fair Credit Reporting Act*

28.     The FCRA governs the conduct of consumer reporting agencies in an effort to preserve the integrity of the consumer banking system and to protect the rights of consumers to fairness and accuracy in the reporting of their credit information.

29.     The FCRA was designed to protect consumers from the harmful effects of inaccurate information reported in consumer reports (commonly referred to as "credit reports"). Thus, Congress enshrined the principles of "fair and accurate credit reporting" and the "need to ensure that consumer reporting agencies exercise their grave responsibilities with fairness" in the very first provision of the FCRA. *See* 15 U.S.C. § 1681(a).

30.     Specifically, the statute was intended to ensure that "consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information." *See* 15 U.S.C. § 1681(b).

31.     To that end, the FCRA imposes the following twin duties on consumer reporting agencies: (i) consumer reporting agencies must devise and implement reasonable procedures to ensure the "maximum possible accuracy" of information contained in consumer reports (15 U.S.C. § 1681e(b)); and (ii) consumer reporting agencies must reinvestigate the facts and circumstances surrounding a consumer's dispute and timely correct any inaccuracies (15 U.S.C. § 1681i).

32.     The FCRA provides consumers with a private right of action against consumer reporting agencies that willfully or negligently fail to comply with their statutory obligations under the FCRA.

33.     The FCRA also protects the provision of information it governs to only specific circumstances. Without an FCRA permissible purpose, one cannot access consumer reports for any reason. 15 U.S.C. § 1681b(f).

### *Plaintiff's Experience*

34.     The United States Congress has found that the banking system is dependent upon fair and accurate credit reporting. Inaccurate consumer reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continual functioning of the banking system.

35.     CRAs like LexisNexis sell millions of consumer reports (often called "credit reports" or "reports") per year, and also sell credit and risk scores.

36.     Pursuant to 15 U.S.C. § 1681e(b), CRAs like LexisNexis are required "to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

37.     Pursuant to 15 U.S.C. §§ 1681b and 1681e(a), CRAs must also maintain reasonable procedures to assure that consumer reports are sold only for legitimate "permissible purposes."

38.     LexisNexis's consumer reports generally contain the following information:

    (a)    Header/Identifying Information: this section generally includes the consumer's name, current and prior addresses, date of birth, and phone numbers;

    (b)    Tradeline Information: this section pertains to consumer credit history, and includes the type of credit account, credit limit or loan amount, account balance, payment history, and status;

    (c)    Public Record Information: this section typically includes public record information, such as bankruptcy filings; and,

    (d)    Credit Inquiries: this section lists every entity that has accessed the consumer's file through a "hard inquiry" (i.e., consumer-initiated activities, such as applications for credit cards, to rent

an apartment, to open a deposit account, or for other services) or

"soft inquiry" (i.e., user-initiated inquiries like prescreening).

39.     The LexisNexis obtains consumer information from various sources. Some consumer information is sent directly to the CRA by furnishers like SoFi.

40.     The majority of institutions that offer financial services (e.g., banks, creditors, and lenders) rely upon consumer reports from CRAs like LexisNexis to make lending decisions.

41.     Those institutions also use credit scores, and other proprietary third-party algorithms (or "scoring" models), including debt-to-income ratios, to interpret the information in a consumer's consumer report, which is based on the amount of reported debt, payment history, and date of delinquencies contained in LexisNexis consumer reports.

42.     The information LexisNexis's reports include in a consumer report contributes to a consumer's overall creditworthiness and determines their credit and risk scores.

43.     FICO Scores are calculated using information contained in the Credit Bureau Defendants' consumer reports.

44.     LexisNexis knows that lenders also consider a consumer's credit history, such as accounts noted as being in collection, before deciding to extend credit or approve financing terms.

45.     LexisNexis also knows that including information such as accounts noted as in collection negatively impact consumers' ability to obtain credit, or such notations cause creditors to refuse to lend to consumers or lend to them at higher interest rates than the lenders offer consumers without such accounts in their credit histories.

46.     LexisNexis routinely reports inaccurate and materially misleading information about consumers like Plaintiff, without verifying or updating it as required by Section 1681e(b) of the FCRA.

47.     LexisNexis fails to employ reasonable procedures to assure the maximum possible accuracy of the information that they report about consumers, including but not limited to, account balances, account statuses, payment histories, and payment statuses.

48.     Consumers have filed thousands of lawsuits and FTC and Consumer Financial Protection Bureau Complaints against LexisNexis for their inaccurate credit reporting.

49.     Thus, LexisNexis is on continued notice of its inadequate reporting procedures. Specifically, LexisNexis is on notice that its inadequate procedures regularly result in the reporting of inaccurate balances, account statuses, payment histories, and payment statuses.

50.     The FCRA allows for a remedy for a "willful" violation.  A willful act or violation includes, "not only knowing violations of [the statute], but reckless ones as well." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, at 57 (2007). A "reckless" action includes conduct whereby "the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Id*. at 69.

51.     Proof of willfulness includes, for example, "evidence that other consumers have lodged complaints similar to" the one made by Plaintiff and a failure to make the correction right away. *Dalton*, 257 F.3d at 418; *Saunders v. Branch Banking & Trust Co. of Va*., 526 F.3d 142, 151 (4th Cir. 2008).

52.     The FCRA section at issue here, and informative guidance, have been around now for over 50 years. The language of § 1681e(b) has not changed. LexisNexis' dispute investigation obligations under § 1681i(a) have not changed. The FCRA's caution of LexisNexis' "grave responsibilities" to ensure accuracy has not changed.

53.     LexisNexis has received numerous disputes and other complaints regarding the furnisher at issue in this case—sufficient to require a reasonable company to at least examine or investigate further before blindly accepting further reporting.

13

***Plaintiff Attempts to Obtain Credit, But***
***Is Rejected Because of Inaccurate LexisNexis Reporting***

54.     In February 2024, Plaintiff attempted to purchase a BMW from a dealer in Charlotte.

55.     The dealer attempted to finance the purchase through Ally Bank, which uses SageStream (a LexisNexis affiliate) as the source for credit reports for applicants like Plaintiff.

56.     Ally rejected Plaintiff's application, and the dealer's representative explained to Plaintiff that the problem was a credit inquiry from SoFi that listed as the purpose an account being in collection, which was untrue.

57.     Plaintiff has never had a SoFi account, so there would be no need for SoFi to access Plaintiff's credit at all, let alone to collect on an account.

58.     Plaintiff also did not apply with SoFi for credit in 2023 or 2024.

59.     Yet, SoFi pulled Plaintiff's credit from LexisNexis at least 4 times during that period.

60.     Plaintiff contacted LexisNexis and obtained a copy of his consumer report, which confirmed what the dealer told him about the SoFi collection inquiry.

61.     Plaintiff disputed the inaccuracy with LexisNexis, but it did not correct the error.

62.     Plaintiff applied for financing of a BMW again in October 2024, with the same result.

63.     The dealer used Ally for financing, and Ally pulled a report from LexisNexis to judge Plaintiff's creditworthiness.

64.     The LexisNexis report again listed the SoFi inquiry for collections, which remained inaccurate and unaltered despite Plaintiff's dispute to LexisNexis.

65.     Ally again rejected Plaintiff's application, and the dealer's representative again explained resulted from the SoFi collection inquiry.

66.     Plaintiff disputed the inaccuracy with LexisNexis a second time, but LexisNexis again did not correct the inaccuracy.

67.     LexisNexis therefore violated 15 U.S.C. § 1681e(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy of the credit information it published and maintained concerning Plaintiff.

68.     LexisNexis further violated 15 U.S.C. § 1681i by failing to reasonably investigate Plaintiff's disputes of inaccurate information in his LexisNexis report.

69.     Upon information and belief, LexisNexis failed to conduct a reasonable reinvestigation of Plaintiff's disputes, relying just on what SoFi reported to it as a substitute for its own, statutorily mandated investigation.

70.     Thereafter, LexisNexis failed to correct or delete the SoFi inquiry, in violation of 15 U.S.C. § 1681i(a)(1)(A).

71. For its part, SoFi violated the FCRA by repeatedly accessing Plaintiff's credit without having an FCRA permissible purpose for doing so. SoFi pulled Plaintiff's credit repeatedly in 2023 and 2024, but Plaintiff was not applying for credit with SoFi and had no accounts with SoFi.

### *Plaintiff's Damages*

72. Plaintiff reasonably believes that LexisNexis continues to furnish data about him to creditors that is inaccurate despite his disputes. He has been rejected twice for a simple vehicle loan, and there is nothing indicating that LexisNexis's reporting would be different if he applied for financing today.

73. As a result of the inaccurate reporting associated with the SoFi account, LexisNexis inhibited Plaintiff's ability to obtain credit on two occasions.

74. At all times pertinent hereto, LexisNexis was acting by and through its agents, servants, and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of LexisNexis.

75. At all times pertinent hereto, the conduct of Defendants, as well as that of their respective agents, servants, and/or employees, was intentional, willful, reckless, grossly negligent and in utter disregard for federal law and the rights of Plaintiff herein.

76.     As a standard practice, LexisNexis does not conduct independent investigations in response to consumer disputes. Instead, they merely parrot the response of the credit furnisher despite numerous court decisions admonishing this practice. *See Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997) (The 'grave responsibilit[y]' imposed by § 1681i(a) must consist of something more than merely parroting information received from other sources. Therefore, a 'reinvestigation' that merely shifts the burden back to the consumer and the credit grantor cannot fulfill the obligations contemplated by the statute."); *Apodaca v. Discover Fin. Servs.*, 417 F. Supp. 2d 1220, 1230-31 (D.N.M. 2006) (noting that credit reporting agencies may not rely on automated procedures that make only superficial inquiries once the consumer has notified it that information is disputed); *Gorman v. Experian Info. Sols., Inc.*, 2008 WL 4934047, at *6 (S.D.N.Y. Nov. 19, 2008).

77.     LexisNexis is aware of the shortcomings of its procedures and intentionally choose not to comply with the FCRA to lower costs.  Accordingly, LexisNexis's violations of the FCRA are willful.

78.     SoFi's violations are likewise willful. SoFi knew or should have known at the time it accessed Plaintiff's LexisNexis consumer report that it had no basis for doing so. Despite lacking such a basis, SoFi accessed Plaintiff's consumer report anyway. Such a violation is willful.

79.     As a result of Defendants' conduct, action, and inaction, Plaintiff suffered damage by loss of credit; loss of ability to purchase and benefit from his good credit rating; detriment to his credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; the expenditure of labor and effort disputing and trying to correct the inaccurate credit reporting; and emotional distress including the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

## CLAIMS FOR RELIEF

### COUNT I
### 15 U.S.C. § 1681e(b)
### Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy
### (Against Defendant LexisNexis)

80.     Plaintiff re-alleges and incorporates by reference the allegations set forth in preceding paragraphs as if fully stated herein.

81.     The FCRA imposes a duty on consumer reporting agencies to devise and implement procedures to ensure the "maximum possible accuracy" of consumer reports, as follows:

> Whenever a consumer reporting agency prepares a consumer report, it shall follow reasonable procedures to assure **maximum possible accuracy** of the information concerning the individual about whom the report relates.

15 U.S.C. §1681e(b) (emphasis added).

82.     On numerous occasions, Defendant LexisNexis prepared patently false consumer reports concerning Plaintiff.

83.     LexisNexis readily sold such false reports to one or more third parties, thereby misrepresenting Plaintiff, and ultimately Plaintiff's creditworthiness.

84.     Defendant LexisNexis violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning Plaintiff.

85.     As a result of LexisNexis conduct, action, and inaction, Plaintiff suffered damage by loss of credit; loss of ability to purchase and benefit from his good credit rating; detriment to his credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; the expenditure of labor and effort disputing and trying to correct the inaccurate credit reporting; and emotional distress including the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

86.     LexisNexis's conduct, actions, and inactions were willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.   Alternatively, it was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

87.     Plaintiff is entitled to recover attorneys' fees and costs from LexisNexis in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## COUNT II
## 15 U.S.C. § 1681i
## Failure to Perform a Reasonable Reinvestigation
## (Second Claim for Relief Against Defendant LexisNexis)

88.     Plaintiff re-alleges and incorporates by reference the allegations set forth in preceding paragraphs as if fully stated herein.

89.     The FCRA mandates that a CRA conducts an investigation of the accuracy of information "[I]f the completeness or accuracy of any item of information contained in a consumer's file" is disputed by the consumer.  *See* 15 U.S.C. § 1681i(a)(1).  The Act imposed a 30-day time limit for the completion of such an investigation.  *Id*.

90.     The FCRA provides that if a CRA conducts an investigation of disputed information and confirms that the information is in fact inaccurate or is unable to verify the accuracy of the disputed information, the CRA is required to delete that item of information from the consumer's file.  *See* 15 U.S.C. § 1681i(a)(5)(A).

91.     On at least one occasion during the past two years, Plaintiff disputed the inaccurate information with LexisNexis and requested that it correct and/or delete a specific item in his credit file that is patently inaccurate, misleading, and

highly damaging to her, namely the SoFi credit inquiry noting that it was for collection of an account.

92. In response to Plaintiff's disputes, LexisNexis failed to conduct a reinvestigation, or such investigation was so shoddy as to allow patently false, logically inconsistent, and damaging information to remain in Plaintiff's credit file.

93. LexisNexis violated 15 U.S.C. § 1681i by failing to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate and record the current status of the disputed information, or delete the disputed information, before the end of the 30-day period beginning on the date on which it received the notices of dispute from Plaintiff; and by failing to maintain reasonable procedures with which to filter and verify disputed information in Plaintiff's credit file.

94. As a result of LexisNexis's conduct, action, and inaction, Plaintiff suffered damage by loss of credit; loss of ability to purchase and benefit from his good credit rating; detriment to his credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; the expenditure of labor and effort disputing and trying to correct the inaccurate credit reporting; and emotional distress including the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

95.     LexisNexis's conduct, actions, and inactions were willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  Alternatively, it was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

96.     Plaintiff is entitled to recover attorneys' fees and costs from LexisNexis in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## COUNT III
### 15 U.S.C. § 1681b(f)
### Accessing Plaintiff's Consumer Report Without A Permissible Purpose
### (Claim for Relief Against Defendant SoFi)

97.     Plaintiff re-alleges and incorporates by reference the allegations set forth in preceding paragraphs as if fully stated herein.

98.     SoFi violated § 1681b(f) of the FCRA by obtaining Plaintiff's consumer report without a permissible purpose.

99.     SoFi violated Plaintiff's privacy when it obtained a consumer report (1) without confirming Plaintiff's identity, and (2) for a purpose outside of those allowed by Congress pursuant to § 1681b(f).

100.    Plaintiff suffered real and actual harm and injury and is entitled to actual damages under both 15 U.S.C. §§ 1681n and 1681o.

101. By accessing Plaintiff's private information without a statutorily-permissible purpose, SoFi violated Plaintiff's privacy and subjected Plaintiff to further fear and apprehension surrounding identity theft.

102. SoFi not only obtained unauthorized access to Plaintiff's information, but appears to have used that information to try and collect an account Plaintiff did not owe.

103. In every step of the process, SoFi placed its own desire to obtain money Plaintiff did not owe ahead of Plaintiff's statutory right to privacy and the security of Plaintiff's information.

104. As a result of SoFi's conduct, action, and inaction, Plaintiff suffered damage by loss of credit; loss of ability to purchase and benefit from his good credit rating; detriment to his credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; the expenditure of labor and effort disputing and trying to correct the inaccurate credit reporting; and emotional distress including the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

105. SoFi's conduct, action, and inaction were willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Alternatively, it was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

106.    Plaintiff is entitled to recover attorneys' fees and costs from SoFi in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## DEMAND FOR JURY TRIAL

Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for the following relief:

a)  Determining that Defendants negligently and/or willfully violated the FCRA;

b)  Awarding Plaintiff actual, statutory, and punitive damages as provided by the FCRA;

c)  Awarding Plaintiff reasonable attorneys' fees and costs as provided by the FCRA; and,

d)  Granting further relief, in law or equity, as this Court may deem appropriate and just.

Respectfully submitted this 13th day of June 2025.

**TIMOTHY J. McCLUSKY,**

By:   _/s/ Leonard A. Bennett_
Leonard A. Bennett, NCSB #21576
**CONSUMER LITIGATION ASSOCIATES, P.C.**
763 J. Clyde Morris Blvd., Suite 1-A
Newport News, VA 23601
(757) 930-3660 – Telephone
(757) 930-3662 – Facsimile

24

Email: lenbennett@clalegal.com

*Counsel for Plaintiff*